# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **WAGNER SHOES, LLC,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | CASE NO. _____ |
| **AUTO-OWNERS INSURANCE** ) | |
| **COMPANY,** ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

### I
### PARTIES

1. Plaintiff, **WAGNER SHOES, LLC**, is an Alabama limited liability corporation authorized to and doing business in the state of Alabama at all times material to the Complaint.

2. Defendant, **AUTO-OWNERS INSURANCE COMPANY**, is a foreign insurance corporation headquartered in the state of Michigan and doing business in the state of Alabama at all times material to the Complaint.

1

## II
## JURISDICTION AND VENUE

3. This is a civil action seeking a declaratory judgment brought under the provisions of 28 U.S.C. § 2201 to declare the rights and other legal relations of any interested party seeking such declaration. The Court has jurisdiction of this action under the provisions of 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. Venue is proper in the United States District Court for the Northern District of Alabama, Western Division, under 28 U.S.C. § 1391 because the Defendant does business by agent in this judicial district, a substantial part of the events giving rise to the claim occurred in this district, and the Defendant is subject to personal jurisdiction in this district.

## III
## FACTUAL BACKGROUND

### A.
### COVID-19

4. This case arises during the 2020 COVID-19 Pandemic.

5. COVID-19 was first detected in Wuhan City, Hubei Province, China. Although the first infections were linked to a live animal market, the same is now spreading from person to person contact. The agent that causes COVID-19 spreads easily and sustainably in the community (community spread). This term was first

used in 1945. The Merriam-Webster Dictionary defines the same as "the spread of a contagious disease to individuals in a particular geographic location who have no known contact with other infected individuals or who have not recently traveled to an area where the disease has any documented cases."

6. Thus, it is undisputed that community spread means people have been infected with COVID-19 in an area, including some who are not sure how or where they became infected. In addition to person to person spread, one may contract COVID-19 by touching a surface or object that has the infectious agent on it and then touching their own mouth, nose, or possibly their eyes. (Paragraphs 7 and 8 sourced from *coronavirus.gov* and the Centers for Disease Control and Prevention.)

7. A study published in the October 2018 International Journal of Environmental Research and Public Health (sourced from the National Center for Biotechnology Information [NCBI], stated, "High-touch surfaces are recognized as a possible reservoir of infectious agents and their contamination can pose a risk also for the spread of multi-resistant organisms, hence they are recommended to be cleaned and disinfected on a more frequent schedule than minimal touch surfaces." It is undisputed that COVID-19 can and will reside on everyday surfaces including those that are characterized as high-touch (tables, doorknobs, light switches, countertops, handles, desks, telephones, keyboards, toilets, faucets, sinks – anywhere on any surface on which one may leave a fingerprint).

8.     It is undisputed that "[c]leaning is the necessary first step of any sterilization or disinfection process (for high-touch surfaces). Cleaning is a form of decontamination that renders the environmental surface safe to handle or use" by removing organic matter and agents which interfere with microbial inactivation.  To disinfect the same, the Centers for Disease Control and Prevention (CDC) recommends the use of a disinfectant registered with the Environmental Protection Agency (EPA). The National Pesticide Information Center (NPIC) is linked to and referenced by the EPA in respect to using disinfectants to control COVID-19. The NPIC published and updated the following table on March 5, 2020 (Paragraphs 9 and 10 sourced from the EPA, CDC, and NPIC.)

**Using products effectively:**
- To kill the virus, the surface must stay wet for the entire time on the label. Look for "contact time" or "dwell time".
- Surface wipes can dry out during use. They must remain wet to be effective.
- Each product has only been shown to work where the label says it can be used. Look for **"use sites"** on the label.
- Disinfectants may not work on all surfaces. Follow the label carefully. Examples of surface types are listed in Table 1 below.
- "Cleaning" wipes do not kill viruses. They do not make claims to disinfect and are not registered by the U.S. EPA.

Table 1. Porosity of common household materials[1,2,3,4]

| Porous | | Semi-porous | | Non-porous |
|---|---|---|---|---|
| Carpeting | Upholstered furniture | Wood | Hardwood floor | Some tiles |
| Clothing and fabrics | Leather | Drywall | Linoleum | Some sealed countertops |
| Bedding and pillows | Wall insulation | Tile grout | Concrete | Glass |
| Mattresses | Ceiling tile | | | Metal |

9.     The survivability of the COVID-19 infectious agent on surfaces of different permeability depends on the surface in question and the environmental conditions (all of which will determine how long the property is affected). Already, trade organizations in the professional cleaning and supply industry are establishing protocols for the COVID-19 agent including the Global Risk Advisory Council

(GBAC, a division of ISSA) that recommends the use of personal protective equipment (PPE), tools, and equipment in the cleaning and disinfection process.

10. While researchers have been trying to determine whether the COVID-19 agent can travel through the air, it is undisputed that evidence pointing to airborne transmission — in which the disease spreads in the much smaller particles from exhaled air, known as aerosols — is occurring, and precautions, such as increasing ventilation indoors, are recommended to reduce the risk of infection. And, according to the New England Journal of Medicine, COVID-19 aerosols can survive in the air for several hours without remediation ("remediation" being the action of reversing or stopping environmental damage).

11. It is undisputed that research supported by the Intramural Research Program of the National Institute of Allergy and Infectious Diseases, National Institutes of Health, published in the New England Journal of Medicine on March 17, 2020, affirmatively indicates that aerosol and fomite (materials that are likely to carry infection such as clothes and furniture, for example) transmission of COVID-19 is credible, since the virus can remain viable and infectious in aerosols for hours and on surfaces up to days. (Sourced from the New England Journal of Medicine on date indicated.)

## B.
## BUSINESS CLOSURES

12. It is undisputed that governments across the globe are imposing strict limitations and lockdowns on businesses and all forms of societal functions and interactions deemed non-essential in order to slow the community and aerosol spreads of COVID-19. From the macro perspective of limitations and lockdowns imposed by nations and states to the micro perspective of cities and communities, nothing in society or commerce has been left untouched.

13. And the same applies in this case. It is undisputed that on March 26, 2020 (during the contractual term of the insurance policies between Plaintiff and Defendant), the City of Tuscaloosa, by and through Mayor Walt Maddox, issued an executive order extending to 24 hours per day a previous public safety curfew throughout the city. During this period all "non-essential businesses and services" are, without exception, ordered to close. The same include

- Retail stores:
    - Furniture & Home Furnishing Stores
    - Clothing, Shoe & Clothing Accessories Stores
    - Jewelry, Luggage, and Leather Goods Stores
    - Department Stores
    - Sporting Goods
    - Hobby, Book, & Music Stores
    - Florists

14. Business closures are mandated to enforce "social distancing." As explained by the World Health Organization (WHO), social distancing, sometimes

referred to as physical distancing, is a set of non-pharmaceutical interventions or measures taken to prevent the spread of a contagious disease by maintaining a physical distance between people and reducing the number of times people come into close contact with each other. The WHO acknowledges that social or physical distancing measures are "very hard socially and they're very hard economically."

15. It is undisputed that Plaintiff, **WAGNER SHOE, LLC**, owns and operates the retail store, Wagner's Shoes for Kids. As a retail business, Plaintiff sells athletic, dress, and casual shoes to end users, the public, through brands such as Asics, Michael Kors, and Under Armour. It is undisputed that as a retailer, Wagner's very economic survival is dependent on engaging and selling to local customers physically present in its store. The ongoing financial damage caused to small retail businesses similar to the Plaintiff is illustrated by the creation of the "Small Business Relief Fund" by the Chamber of Commerce of West Alabama:

**SMALL BUSINESS RELIEF FUND APPLICATION**

The Small Business Relief Fund is a Community Foundation of West Alabama fund offered in cooperation with the Chamber of Commerce of West Alabama. The fund was created to assist small businesses that have experienced a financial hardship as a result of Coronavirus (COVID-19). Through the years, our local small businesses have been there for us. They are part of what makes our community unique and special. This is one way that we are attempting to return the favor and help them weather this storm. This fund is made possible by the generous contributions of individuals, companies, foundations, and government entities throughout Tuscaloosa and West Alabama.




## C.
## INSURANCE POLICY

16. It is undisputed that at all times material to this Complaint, **WAGNER SHOE** possessed a Businessowners Policy (BP) contract of insurance (Policy Number 49-585-800-01) and a Commercial Umbrella Insurance Policy contract of insurance with **AUTO-OWNERS**.

17. Coverage A, "Businessowners Special Property Coverage Form (BP 00 02 01 87)," states Auto-Owners "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Coverage A further states that "Covered Causes of Loss" includes "RISKS OF DIRECT PHYSICAL LOSS" unless excluded. Same includes "Business Income" and "Extra Expense" coverage.

18. It is undisputed that Wagner's Shoes for Kids is "covered property" at the premises described in the policy and that "covered property" includes the buildings and structures as well as "permanently installed fixtures" and "personal property used to maintain or service the building." It is undisputed that Coverage A further states that "business personal property" located in or on the premises including property owned by the insured and used in its business is "covered property."

19. It is undisputed this contract of insurance is an "All-Risk" policy. When a property insurance policy, including that between Plaintiff and Defendant, is written on an all-risk basis (with or without the word "all"), the insured only has the burden to show (a) the existence of the policy and (b) a loss to covered property. The insured is not required to establish the cause of loss. Rather, the burden of proof as to causation unequivocally shifted to the insurer even though the policy may not say so.

20. Once the insured, Wagner Shoe, fulfills these minimal requirements, the insurer, Auto-Owners, if it wishes to preclude coverage, must then prove that the claim is excluded from coverage. (Sourced from "Insurance Contract Analysis," Wiening and Malecki, American Institute for Chartered Property Casualty Underwriters [CPCU], 1992. See, also, "Legal Concepts of Insurance," Lustig (2010): In the case of all risk insurance, the burden of proof is generally held to be favorable to the insured to establish some casualty. The burden then shifts to the insurer to prove that the loss fell within some excepted cause.)

21. It is undisputed that **WAGNER SHOE** communicated with its Tuscaloosa insurance broker (Fitts Agency, Inc.) on March 27, 2020, and extended a claim for contractual property, business interruption, and other damages due to the civil authority action taken by the City of Tuscaloosa and ongoing property damage

caused by the COVID-19 agent. Plaintiff was informed there was no coverage for the same, but that it could pursue the matter.

## (1)
## Business Interruption Insurance

22. Business interruption insurance protects against economic losses resulting from a business's inability to put insured property damaged by a covered peril to its normal use. This coverage typically indemnifies for loss of revenue that would have been earned had there been no business interruption and the continuing normal operating expenses incurred during the time it takes to restore the damaged property. Typical requirements for a recoverable business interruption loss include (a) physical damage to (b) insured property (c) caused by a covered loss, (d) resulting in a quantifiable business insurance loss (e) during the time period it takes to remediate or restore the same.

## (2)
## Direct Physical Loss

23. Direct physical loss can exist without actual destruction of property or structural damage to property: in analogous circumstances to the COVID-19 agent, the presence of harmful substances at or on a property can constitute "property damage" or "direct physical loss" that triggers first party property coverage. For instance, ammonia accidently released into a facility, renders the building unsafe until it can be aired out and cleaned: covered property damage has occurred. If the

presence of harmful substances renders the property uninhabitable or unusable, the coverage requirement of direct physical loss as a necessary condition has been met.

### (3)
### Closure by Civil Authority

24. Commercial property policies may include coverage for losses caused by forced closure of property by civil authority. The coverage applies when an insured is unable to access its property due to a government order as a result of physical damage to insured or adjacent property.

### COUNT I
### DECLARATORY JUDGMENT

25. There is a justiciable controversy which exists between the parties to the Complaint in that the Defendant, **AUTO-OWNERS INSURANCE COMPANY**, denies that there is any coverage for the factual matters alleged herein. Plaintiff, **WAGNER SHOE**, maintains there is coverage for the same.

26. An actual case or controversy exists regarding the rights and obligations under the policy of insurance at issue to reimburse Plaintiff for the full amount of losses directly caused by the COVID-19 agent and the business interruption caused by the closure orders. Thus, **WAGNER SHOE** requests that a declaratory judgment be entered as follows:

A. By incorporating the Complaint's factual allegations by reference and as if fully set out in this paragraph, a declaration that **WAGNER SHOE** has proven

Case 7:20-cv-00465-GMB   Document 1   Filed 04/06/20   Page 12 of 13

the existence of an insurance policy between the same and Defendant and has proven a loss to covered property.

  B. By incorporating the Complaint's factual allegations by reference and as if fully set out in this paragraph, a declaration that all losses incurred by **WAGNER SHOE** related to the COVID-19 agent and business interruption caused by current and ongoing closure orders are insured losses under Plaintiff's policy of insurance.

  C. By incorporating the Complaint's factual allegations by reference and as if fully set out in this paragraph, a declaration that **AUTO-OWNERS** is obligated to pay Plaintiff for the full amount of losses incurred and to be incurred in connection with its covered business losses and expenses related to the COVID-19 agent and current and ongoing closure orders.

         Respectfully submitted,

         */s/ R. Matt Glover*  (asb-7828-a43g)
         R. Matt Glover
         Prince Glover Hayes
         1 Cypress Point
         701 Rice Mine Road North
         Tuscaloosa, Alabama 35406
         Phone: (205) 345-1234
         Fax: (205) 752-6313
         Email: mglover@princelaw.net

12

*/s/ Ted Colquett* (asb-4624-t58p)  
Ted Colquett  
COLQUETT LAW, LLC  
Post Office Box 59834  
2917 Central Avenue, Suite 305  
Birmingham, Alabama 35259-0834  
Phone: (205) 245-4370  
Email: ted@colquettlaw.com

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Auto-Owners Insurance Company  
c/o Sandra McCollough  
5915 Carmichael Road  
Montgomery, Alabama 36117