IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| WAGNER SHOES, LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| OWNERS INSURANCE COMPANY, | ) ) ) ) | 7:20-cv-00465-LSC |
| Defendant. | ) ) ) ) | |

**MEMORANDUM OF OPINION**

The COVID pandemic has caused a myriad of upheavals to society, affecting many aspects of daily life. Businesses, especially those reliant on in-person traffic, have borne much of this disruption. In this case, Wagner Shoes LLC ("Wagner") sued its insurance provider, Owners Insurance Company ("Owners"), seeking to recoup business income losses allegedly sustained as a result of government-ordered closures. The relevant policy language requires "direct physical loss of or damage" to property. Because this language does not cover losses stemming from a government-ordered closure, Owners' motion for summary judgment is due to be GRANTED.

I. **FACTS AND PROCEDURAL POSTURE**

For approximately a month in the spring of 2020, Wagner could not open its doors to the public because of closure orders issued by the city and state. (Doc. 50-1 at 16.) During this period, Wagner fulfilled online and curbside orders on the store premises (though curbside orders were allegedly impermissible part of the time). (Doc. 50-2 at 9–10.) Before reopening to the public, Wagner hired Servpro to clean the store and disinfect surfaces. (Doc. 50-1 at 48.) However, Wagner does not allege that the novel coronavirus was then present at its store, nor does it allege that any person who had contracted the virus entered the store. (*See id.* at 34.)

On March 27, 2020, Wagner sent a letter to its insurance agent, attempting to recover under its commercial property insurance policy with Owners. (*Id.* at 35.) The letter cited the public health orders as the basis for a business interruption claim. (*Id.* at 36.) On March 30, Matt Wagner, the president of Wagner Shoes, discussed the claim over the phone with an Owners field claim representative. (Doc. 48-8 at 3–4; Doc. 49 at 3.) Wagner filed this lawsuit on April 6. According to Owners, Wagner initiated this action three days before receiving its coverage position letter. (Doc. 47.) Wagner claims that Owners decided to deny the claim five days before it filed suit and that it received the denial letter on April 6, rather than April 9. (Doc. 49 at 7.)

In the policy's general grant of coverage, Owners obligates itself to "pay for direct physical loss of or damage to Covered property . . . ." (Doc. 48-9 at 43.) This grant of coverage includes additional categories such as "Business Income" and "Extra Expense." (*Id.* at 46.) These sections of the policy require Owners to cover eligible losses sustained during a "period of restoration," which begins "with the date of direct physical loss or damage" and ends when the property "should be repaired, rebuilt, or replaced . . . ." (*Id.* at 59–60.)

## II.   STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court "must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the nonmoving party's favor." *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990). The Court does not weigh the evidence as fact-finder; rather, it must "determin[e] whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

## III.   ANALYSIS

### A. Article III Case or Controversy

Mindful of its status as a tribunal of limited jurisdiction, this Court must first assure itself that this dispute presents a justiciable case or controversy. *See, e.g.*, *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1542 (11th Cir. 1993). In its motion for summary judgment, Owners intimates that there was no justiciable case or controversy when Wagner filed suit. Specifically, Owners claims that Wagner initiated this action before receiving notice of the denial of its claim. In Owners' characterization, this case involves an improper anticipatory filing of a declaratory judgment action and does not satisfy the strictures of Article III.

To placate Article III, a dispute "may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985). The existence of a justiciable controversy is typically assessed when a complaint is filed. *See Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995). However, post-filing "intervening events" can ripen a case for adjudication. *See Henley v. Herring*, 779 F.2d 1553, 1555 (11th Cir. 1986); *see also Atlanta Gas Light Co.*, 68 F.3d at 415, n.12; *Yacht Club on the Intracoastal Condo. Ass'n v. Lexington Ins. Co.*, 509 F. App'x 919, 922–23 (11th Cir. 2013).

Even accepting the timeline of events put forth by Owners, a justiciable controversy exists. Owners cites *Atlanta Gas Light* as an analogous case of an improper anticipatory filing of a declaratory judgment action, but key facts distinguish it. In *Atlanta Gas Light*, the plaintiff filed a lawsuit before its insurers received notice of any potential liability. *Atlanta Gas Light*, 68 F.3d at 414–15. Of course, without any notice, the insurers had not yet taken a position as to the extent of coverage. *Id.* Owners, in contrast, had notice of potential liability because of Wagner's letter, which was sent on March 27, 2020, and three days later, Matt Wagner discussed his claim with his assigned representative. (Doc. 50-1 at 35; Doc. 48-8 at 3–4.) When Wagner filed suit on April 6, Owners had already investigated the claim and had elected to deny coverage. (*See* Doc. 50-4 at 141.) Moreover, Wagner alleges a covered loss of business income, but in *Atlanta Gas Light*, it was not clear at the time if the policyholder could have ever alleged a similar loss. *See Atlanta Gas Light*, 68 F.3d at 414–15. Finally, Wagner filed several amended pleadings unlike the plaintiff in *Atlanta Gas Light*. *See id.* at 415, n.12 (noting that "AGL never sought leave of court to amend its pleadings, and no pleading setting forth these recent events was ever filed.").

Thus, in contradistinction to *Atlanta Gas Light*, this case was not an idle or conjectural dispute when filed. But even if the suit was not ripe the day it was filed,

it became ripe—at the latest—a few days later when Wagner received the denial letter from Owners. Accordingly, this Court now turns to the merits.

### B. Interpretation of the Policy Language

To determine the substantive law that governs the interpretation of a contract, Alabama generally applies the traditional rule of *lex loci contractus*. *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991). Under this choice-of-law principle, "a contract is governed by the law of the jurisdiction within which the contract is made." *Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009). This rule further provides that Alabama courts apply the law of the state where a policy was delivered or issued for delivery. *Thompson v. Acceptance Ins. Co.*, 689 So. 2d 89, 92 (Ala. Civ. App. 1996). Therefore, as neither party disputes, Alabama law governs the interpretation of this insurance policy as it was written for and delivered to Wagner at an Alabama address.

Under Alabama law, "the construction of [a] contract and its legal effect become questions of law for the [C]ourt" if the Court decides the terms of the contract are clear and unambiguous. *McDonald v. U.S. Die Casting & Dev. Co.*, 585 So. 2d 853, 855 (Ala. 1991). The Court must interpret a policy's language in light of its ordinary meaning, which calls for "a rational and practical construction." *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 309 (Ala. 1999). The insured bears the

burden of "prov[ing] that coverage exist[s] within the terms of the policy." *Ala. Hosp. Ass'n Trust v. Mut. Assur. Soc'y of Ala.*, 538 So. 2d 1209, 1216 (Ala. 1989). Ascertaining the ordinary meaning of an insurance policy can seem like a Sisyphean task given that few ordinary people speak the parlance of the insurance industry. Nonetheless, that is the Court's role in the present case.

The unambiguous meaning of "direct physical loss of or damage to" property forecloses Wagner's claim. The modifiers, "direct" and "physical," "require a perceptible harm or destruction to property." *SJP Inv. Partners LLC v. Cincinnati Ins. Co.,* No. 20-cv-1033-RDP, 2021 WL 3851979, at *4 (N.D. Ala. Aug. 27, 2021). "Direct" and "physical" would be rendered nugatory if the relevant policy language were interpreted to include solely intangible losses. Certainly, the government orders might have inflicted economic or business losses, but such losses are not synonymous with "direct" and "physical" losses of property. *See Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, 21 F.4th 704, 710 (10th Cir. 2021) (interpreting similar policy language and noting that "[t]he words 'intangible' and 'physical' have opposite meanings.").

Nor does a partial deprivation of use constitute a direct, physical loss of property itself. As deftly illustrated by the Sixth Circuit, "[i]t is one thing for the government to ban the use of a bike or a scooter on city sidewalks; it is quite another

for someone to steal it." *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 401 (6th Cir. 2021). Furthermore, throughout its mandatory sabbatical, Wagner did not lose access to its property, and in fact, continued to use store premises to conduct online business and other aspects of its trade.

The foregoing interpretation is bolstered by the surrounding policy language. Most saliently, the policy only requires Owners to pay for Business Income losses and Extra Expenses during a "period of restoration," which ends "when the property at the described premises should be repaired, rebuilt, or replaced with reasonable speed and similar quality." (Doc. 48-9 at 59–60.) Given this context, "a person of common understanding would understand the 'period of restoration' to run from the moment that business property is 'physically damaged' until it is 'repaired' or 'rebuilt.'" *Woolworth LLC v. Cincinnati Ins. Co.*, 535 F. Supp. 3d 1149, 1153 (N.D. Ala. 2021). Wagner did not undergo a "period of restoration" as its store did not need repairing or rebuilding. To readmit customers, Wagner needed only an end to the public health orders, not any repair or replacement of property. *See Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 456 (5th Cir. 2022) (interpreting similar language and finding that a "prohibition on dine-in services does not require [the insurer] to repair, rebuild, or replace any property in its restaurants.").

Despite Wagner's contention to the contrary, this construction of the policy language does not render "loss" superfluous. In this context, "the plain meaning of the word 'loss' connotes a greater degree of harm than the word 'damage,' not a separate and distinct concept." *Uncork & Create LLC v. Cincinnati Ins. Co.*, --- F.4th ----, No. 21-1311, 2022 WL 662986, at *4, n.8 (4th Cir. Mar. 7, 2022). Hence, by including both "loss" and damage," the policy's scope extends to property that suffers either complete or partial destruction. And again, "loss" must be "direct" and "physical," which precludes a more capacious interpretation. *See Ascent Hosp. Mgmt. Co. v. Emps. Ins. Co. of Wausau*, No. 21-11924, 2022 WL 130722, at *3 (11th Cir. Jan. 14, 2022) (unpublished) ("The plain meaning of 'direct physical loss or damage' thus still requires that the alleged 'loss' be both direct and physical in nature. Diminished profits due to government restrictions are neither."). As used here, "loss" cannot refer to a temporary deprivation of a specific use of property, absent an accompanying physical impact. *See Goodwill Indus.*, 21 F.4th at 711 ("To conclude otherwise would ignore the word 'physical' and violate the requirement that every part of a policy be given meaning.").

Although no binding authority compels this outcome, this Court's decision is far from unguided. When confronted with similar or identical language, an overwhelming majority of federal courts have reached the same conclusion despite

applying the laws of different states. *See, e.g.*, *10012 Holdings, Inc. v. Sentinel Ins. Co.*, 21 F.4th 216, 222 (2d Cir. 2021); *Uncork & Create LLC v. Cincinnati Ins. Co.*, --- F.4th ----, No. 21-1311, 2022 WL 662986 (4th Cir. Mar. 7, 2022); *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 455 (5th Cir. 2022); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 401 (6th Cir. 2021); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 332 (7th Cir. 2021); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 892 (9th Cir. 2021); *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, 21 F.4th 704, 710 (10th Cir. 2021); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021) (unpublished).

### IV. CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment is due to be granted. The Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** and **ORDERED** on April 19, 2022.

_____
L. Scott Coogler
United States District Judge

206888